**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
Email: jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE PETERS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| COLONY CREDIT REAL ESTATE, INC., F/K/A/ COLONY NORTHSTAR CREDIT REAL ESTATE, INC., RICHARD B. SALTZMAN, KEVIN P. TRAENKLE, SUJAN S. PATEL, NEALE W. REDINGTON, CATHERINE D. RICE, VERNON B. SCHWARTZ, DARREN J. TANGEN, JOHN E. WESTERFIELD, and WINSTON W. WILSON, | |
| Defendants. | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Terrence Peters ("Plaintiff"), by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, Plaintiff's counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Colony Credit Real Estate, Inc. f/k/a/ Colony NorthStar Credit Real Estate, Inc. ("Colony Credit" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Colony Credit; and (c) review of other publicly available information concerning Colony Credit.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of persons and/or entities who purchased or otherwise acquired the common stock of Colony Credit pursuant and/or traceable to the Company's false and/or misleading Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the combination of Colony NorthStar, Inc. ("Colony NorthStar") and NorthStar Real Estate Income Trust, Inc. ("NorthStar I") and NorthStar Real Estate Income II, Inc. ("NorthStar II") on or about February 1, 2018 (the "Merger"), seeking to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

1

2.     Colony Credit is a commercial real estate ("CRE") credit real estate investment trust ("REIT") that purports to manage a diversified portfolio of CRE senior mortgage loans, mezzanine loans, preferred equity, debt securities, and net leased properties predominantly in the U.S.

3.     The Company's common stock was registered with the SEC in connection with the Merger.  Following the Merger, Colony Credit's common stock was listed on the New York Stock Exchange ("NYSE") without an initial public offering: stockholders of NorthStar I received 0.3532 shares of the Company's Class A common stock for each share of NorthStar I common stock they owned; and stockholders of NorthStar II received 0.3511 shares of the Company's Class A common stock for each share of NorthStar II common stock they owned.

4.     The Registration Statement was materially false and misleading and omitted to state: (i) that the credit quality of certain of the Company's assets had deteriorated prior to the Merger and were continuing to deteriorate at the time of the Merger; (ii) that certain of the Company's loans, including four loans of approximately $261 million related to a New York hotel, were substantially impaired, there was insufficient collateral to secure the loans, and it was unlikely that the loans would be repaid; (iii) that, as a result, the valuation attributed to certain of the Company's assets was overstated; (iv) that certain of the assets contributed as part of the Merger were of substantially lower value than reflected in the Company's financial statements and the Registration Statement; (v) that, as a result,

2

the Company's financial condition, including its book value, was materially overstated; and (vi) that, as a result of the foregoing, the positive statements in the Registration Statement about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

5.      On August 8, 2019, Colony Credit issued a press release to report its second quarter 2019 financial results, in which it reported a $119 million provision for loan losses.

6.      On this news, the Company's share price fell $2.00 per share, or more than 12%, over two consecutive trading sessions to close at $14.05 per share on August 12, 2019.

7.      On November 8, 2019, the Company announced a portfolio bifurcation of certain assets and disclosed a $127 million provision for loan losses.

8.      On this news, the Company's share price fell $2.50 per share, or nearly 18%, to close at $11.75 per share on November 8, 2019.

9.      As of the date of the filing of this complaint, Colony Credit's shares last closed at $5.40 per share, representing a more than 78% decline from the $25 book value per share valued at the time of the Merger.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

11.      This Court has jurisdiction over the subject matter of this action pursuant to

3

28 U.S.C. § 1331, and Section 22 of the Securities Act (15 U.S.C. § 77v).

12.     Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.  Colony Credit is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

14.     Plaintiff, as set forth in the attached Certification, acquired Colony Credit common stock in the Merger pursuant to the Registration Statement and has been damaged thereby.

15.     Defendant Colony Credit is a Maryland corporation with its principal executive offices located at 515 S. Flower Street, 44th Floor, Los Angeles, California 90071.  Colony Credit's common stock trades in an efficient market on the NYSE under the symbol "CLNC."

16.     Defendant Richard B. Saltzman ("Saltzman") was, at all relevant times, the Chairman of the Board of Directors of the Company.  Saltzman signed or authorized the signing of the Company's Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

17.    Defendant Kevin P. Traenkle ("Traenkle") was, at all relevant times, the Chief Executive Officer and a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.    Defendant Sujan S. Patel ("Patel") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.    Defendant Neale W. Redington ("Redington") was, at all relevant times, the Chief Accounting Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.    Defendant Catherine D. Rice ("Rice") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.    Defendant Vernon B. Schwartz ("Schwartz") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.    Defendant Darren J. Tangen ("Tangen") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23.     Defendant John E. Westerfield ("Westerfield") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendant Winston W. Wilson ("Wilson") was, at all relevant times, a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.     Defendants Saltzman, Traenkle, Patel, Redington, Rice, Schwartz, Tangen, Westerfield, and Wilson are collectively referred to hereinafter as the "Individual Defendants."

26.     Colony Credit and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## Background

27.     Colony Credit is a CRE credit REIT that purports to manage a diversified portfolio of CRE senior mortgage loans, mezzanine loans, preferred equity, debt securities, and net leased properties predominantly in the U.S.  The Company conducts substantially all of its business through Credit RE Operating Company, LLC (the "OP"), a wholly-owned subsidiary of the Company, and owns 97.7% of the outstanding OP units in the OP.

28.     Prior to the Merger, NorthStar I and NorthStar II were REITs with diversified portfolios of CRE debt, select equity and securities investments, predominantly in the U.S.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Their debt investments included first mortgage loans, subordinate mortgage and mezzanine loans, and participations in such loans and preferred equity interests. Their real estate equity interests included direct ownership in property and indirect interests through real estate private equity funds. Their CRE securities primarily consisted of commercial mortgage-backed securities.

29.    The Merger consisted of a combination of a select portfolio of Colony Capital Operating Company, LLC ("CLNY OP") assets and liabilities (the "CLNY OP Contributed Entities"); a select portfolio of assets and liabilities of NRF RED REIT Corp. ("RED REIT"), an indirect subsidiary of CLNY OP (the "RED REIT Contributed Entities"); substantially all of the assets and liabilities of NorthStar I; and all of the assets and liabilities of NorthStar II.

30.    Specifically, the Merger consisted of the following steps: (i) CLNY OP received approximately 44.4 million shares of the Company's Class B-3 common stock in exchange for the CLNY OP Contributed Entities, and RED REIT received approximately 3.1 million common membership units in the OP in exchange for the RED REIT Contributed Entities; (ii) NorthStar I merged with and into the Company, with stockholders of NorthStar I (including Colony Capital, Inc. and its affiliates) receiving 0.3532 shares of the Company's Class A common stock for each share of NorthStar I common stock they owned, for a total of approximately 42.1 million shares of the Company's Class A common stock; (iii) NorthStar II merged with and into the Company,

7

with stockholders of NorthStar II (including Colony Capital, Inc. and its affiliates) receiving 0.3511 shares of the Company's Class A common stock for each share of NorthStar II common stock they owned, for a total of approximately 40.4 million shares of the Company's Class A common stock; and (iv) Colony Credit contributed to its operating company: (a) the CLNY OP Contributed Entities, (b) the equity interests of NorthStar Real Estate Income Trust Operating Partnership, LP ("NorthStar I OP"), the operating partnership of NorthStar I, and (c) the equity interests of NorthStar Real Estate Income Operating Partnership II, LP ("NorthStar II OP"), the operating partnership of NorthStar II, and in connection with that transaction received approximately 126.9 million OP Units.

31.   On February 1, 2018, the Company issued a press release entitled "Colony NorthStar Credit Real Estate, Inc. Lists on New York Stock Exchange with $5.1 Billion in Total Assets."  That press release stated, in relevant part:

> Colony NorthStar Credit Real Estate, Inc. (NYSE: CLNC) ("Colony NorthStar Credit" or the "Company") today announced the completion of the combination (the "Combination") of a select debt and credit real estate portfolio of Colony NorthStar, Inc. ("Colony NorthStar") with substantially all of the assets and liabilities of NorthStar Real Estate Income Trust, Inc., ("NorthStar I"), and all of the assets and liabilities of NorthStar Real Estate Income II, Inc. ("NorthStar II"). The Combination was originally announced on August 28, 2017, and approved by NorthStar I and NorthStar II stockholders at their respective special meetings held on January 18, 2018.
>
> In connection with the closing of the Combination, the Company also today announced the listing of its Class A common stock on the [NYSE]. Trading of the Company's Class A common stock will officially commence this morning under the ticker symbol "CLNC."

The Company is externally managed by a subsidiary of Colony NorthStar, a NYSE-listed global real estate and investment management firm, with a history of consummating approximately $25 billion of commercial real estate debt and credit asset investments. Colony NorthStar and its affiliates own approximately 37% of the Company's common equity on a fully diluted basis, evidencing a strong and continuing alignment of interests between Colony NorthStar and Company stockholders.

The Company has a diversified portfolio with approximately $5.1 billion[] in total assets and $3.3 billion[] in equity value, making it one of the largest [CRE] credit [REITs] by shareholders' equity. The Company's strategy is to originate senior mortgages, mezzanine loans and preferred equity interests, and selectively acquire other CRE debt and credit assets and net leased real estate.

* * *

The Company has a book value per share of approximately $25[], and the Company anticipates an initial annualized dividend yield of approximately 7% of its book value per share[]. Any dividend will be subject to approval by the Company's Board of Directors. The Company expects to have immediate access to over $600 million of liquidity (including the $400 million corporate revolver closed concurrently with the Combination) and over $2 billion[] of repurchase facility capacity to continue to execute on its investment strategy and potentially grow its dividend.

(Footnotes omitted.)

## **Materially False and Misleading Statements Issued in the Registration Statement**

32.    On December 5, 2017, Colony Credit filed its final amendment to the Registration Statement with the SEC on Form S-4/A, which forms part of the Registration Statement. On December 6, 2017, the Company filed its prospectus on Form 424B3 with the SEC, which forms part of the Registration Statement.

33.    The Registration Statement was declared effective on December 6, 2017.

9

34.   On January 31, 2018, the Company filed a post-effective amendment to the Registration Statement, which was declared effective on February 1, 2018.

35.   The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

36.   Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

37.   Regarding the financial information for NorthStar I, the Registration Statement stated:

| (In thousands, except per share data) | Nine Months Ended September 30, | | Year Ended December 31, | | | | |
|---|---|---|---|---|---|---|---|
| | 2017 | 2016 | 2016 | 2015 | 2014 | 2013 | 2012 |
| **Statements of Operations Data:** | | | | | | | |
| Interest income(1) | $ 63,303 | $ 59,006 | $ 77,657 | $ 96,471 | $102,697 | $77,553 | $24,601 |
| Rental and other income | 66,827 | 58,330 | 78,602 | 60,394 | 29,342 | 1,970 | — |
| Total revenues | 130,130 | 117,336 | 156,259 | 156,865 | 132,039 | 79,523 | 24,601 |
| Interest expense—loans receivable(2) | 23,246 | 13,150 | 16,674 | 21,339 | 21,100 | 15,179 | 3,299 |
| Interest expense—real estate(2) | 14,160 | 12,895 | 17,519 | 14,832 | 7,763 | 583 | — |
| Property operating expense | 30,294 | 27,478 | 36,950 | 31,135 | 15,433 | 823 | — |
| Net income | 10,819 | 24,168 | 32,207 | 45,591 | 88,953 | 61,017 | 15,304 |
| Net income attributable to stockholders | 10,739 | 24,079 | 31,952 | 45,614 | 89,124 | 61,271 | 15,304 |
| **Share Data:** | | | | | | | |
| Earnings per share: | | | | | | | |
| Basic | $ 0.09 | $ 0.20 | $ 0.26 | $ 0.38 | $ 0.77 | $ 0.63 | $ 0.44 |
| Diluted | $ 0.09 | $ 0.20 | $ 0.26 | $ 0.38 | $ 0.77 | $ 0.63 | $ 0.44 |

| (In thousands) | September 30, 2017 | December 31, | | | |
|---|---|---|---|---|---|
| | | 2016 | 2015 | 2014 | 2013 | 2012 |
| **Balance Sheet Data:** | | | | | | |
| Total assets | $ 2,444,660 | $ 1,768,480 | $ 1,947,516 | $ 2,188,021 | $ 1,831,104 | $ 859,938 |
| Total debt(3) | 604,039 | 705,589 | 819,716 | 996,178 | 637,752 | 250,812 |
| Total liabilities | 1,542,321 | 799,355 | 915,505 | 1,125,324 | 825,879 | 342,192 |
| Total stockholders' equity | 885,029 | 950,087 | 1,014,324 | 1,043,340 | 1,000,651 | 517,742 |
| Total equity | 902,339 | 969,125 | 1,032,011 | 1,062,697 | 1,005,225 | 517,746 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.    Similarly, regarding the financial performance of NorthStar II, the Registration Statement provided, in relevant part:

| (In thousands, except per share data) | Nine Months Ended September 30, | | Year Ended December 31, | | | |
|---|---|---|---|---|---|---|
| | 2017 | 2016 | 2016 | 2015 | 2014 | 2013 |
| **Statements of Operations Data:** | | | | | | |
| Interest income | $52,873 | $46,033 | $ 64,333 | $35,555 | $11,539 | $ 137 |
| Rental and other income | 32,624 | 32,229 | 43,121 | 19,603 | — | — |
| Total revenues | 85,497 | 78,262 | 107,454 | 55,158 | 11,539 | 137 |
| Interest expense—loans receivable(1) | 15,904 | 11,249 | 15,475 | 10,001 | 3,231 | 42 |
| Interest expense—real estate(1) | 10,648 | 10,257 | 13,612 | 6,778 | — | — |
| Property operating expense | 9,534 | 10,247 | 13,557 | 5,860 | — | — |
| Net income (loss) | 23,777 | 12,165 | 22,449 | (5,391) | 3,183 | 12 |
| Net income (loss) attributable to stockholders | 23,676 | 12,088 | 22,365 | (5,337) | 3,183 | 12 |
| **Share Data:** | | | | | | |
| Earnings (Loss) per share: | | | | | | |
| Basic | $   0.21 | $   0.12 | $   0.22 | $  (0.09) | $   0.21 | $0.04 |
| Diluted | $   0.21 | $   0.12 | $   0.22 | $  (0.09) | $   0.21 | $0.04 |

| (In thousands) | September 30, 2017 | December 31, | | | |
|---|---|---|---|---|---|
| | | 2016 | 2015 | 2014 | 2013 |
| **Balance Sheet Data:** | | | | | |
| Total assets | $  1,814,306 | $1,807,000 | $1,622,638 | $576,418 | $25,326 |
| Total debt(2) | 842,356 | 808,903 | 831,646 | 277,863 | — |
| Total liabilities | 924,676 | 895,609 | 907,556 | 310,276 | 538 |
| Total stockholders' equity | 887,638 | 909,252 | 712,755 | 266,140 | 24,786 |
| Total equity | 889,630 | 911,391 | 715,082 | 266,142 | 24,788 |

39.    Moreover, the Registration Statement provided generic, boilerplate representations regarding risks related to the provision for loan losses, stating, in relevant part:

> ***Provision for loan losses are difficult to estimate, particularly in a challenging economic environment.***
>
> In a challenging economic environment, we may experience an increase in provisions for loan losses and asset impairment charges, as borrowers may be unable to remain current in payments on loans and declining property values weaken our collateral. Our determination of provision for loan losses requires us to make certain estimates and judgments, which may be difficult to determine, particularly in a challenging economic environment. Our estimates and judgments are based on a number of factors, including projected cash flow from the collateral securing our CRE debt, structure, including the availability of reserves and recourse guarantees, likelihood of repayment in full at the

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

maturity of a loan, potential for refinancing and expected market discount rates for varying property types, all of which remain uncertain and are subjective. Our estimates and judgments may not be correct, particularly during challenging economic environments, and therefore our results of operations and financial condition could be severely impacted.

Plainly, the foregoing risk warning was a generic, catch-all provision that was not tailored to Colony Credit's actual known risks regarding the provision for loan losses.

40.     Additionally, with specific respect to assessments of any impairments regarding NorthStar I and NorthStar II, the Registration Statement stated, in relevant part:

> *During the quarterly credit review, or more frequently as necessary, investments are put on highly-monitored status and identified for possible loan loss reserves/asset impairment, as appropriate, based upon several factors, including missed or late contractual payments, significant declines in collateral performance and other data which may indicate a potential issue in our ability to recover our invested capital from an investment.* Our Advisor uses an experienced portfolio management and servicing team that monitors these factors on our behalf.

> \* \* \*

> *Each of our debt investments is secured by CRE collateral and requires customized portfolio management and servicing strategies for dealing with potential credit situations. The complexity of each situation depends on many factors, including the number of properties, the type of property, macro and local market conditions impacting supply/demand, cash flow and the financial condition of our collateral and our borrowers'/tenants' ability to further support the collateral.* Further, many of our investments may be considered transitional in nature because the business plan is to re-position, re-develop or otherwise lease-up the property in order to improve the collateral. At the time of origination or acquisition, the underlying property revenues may not be sufficient to support debt service, lease payments or generate positive net operating income. The business plan may necessitate an interest or lease reserve or other reserves, whether through proceeds from our loans, borrowings, offering proceeds or otherwise, to support debt service or lease payments and capital expenditures during the implementation of the

business plan. There may also be a requirement for the borrower, tenant, guarantor or us, to refill these reserves should they become deficient during the applicable period for any reason.

As of December 31, 2016, each of our CRE debt investments was performing in accordance with the contractual terms of its governing documents in all material respects. There can be no assurance that our investments will continue to perform in accordance with the contractual terms of the governing documents or underwriting and we may, in the future, record loan loss reserves/asset impairment, as appropriate, if required.

(Emphases added.)

41. The statements referenced in ¶¶ 37-40 were materially false and misleading because the Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, the Registration Statement made false and/or misleading statements and/or failed to disclose that: (i) the credit quality of certain of the Company's assets had deteriorated prior to the Merger and were continuing to deteriorate at the time of the Merger; (ii) certain of the Company's loans, including four loans of approximately $261 million related to a New York hotel, were substantially impaired, there was insufficient collateral to secure the loans, and it was unlikely that the loans would be repaid; (iii) as a result, the valuation attributed to certain of the Company's assets was overstated; (iv) certain of the assets contributed as part of the Merger were of substantially lower value than reflected in the Company's financial statements and the Registration Statement; (v) as a result, the Company's financial condition, including its

book value, was materially overstated; and (vi) as a result of the foregoing, the positive statements in the Registration Statement about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Begins to Emerge

42.     On May 15, 2018, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2018.  Therein, Colony Credit disclosed that certain loans had been placed on "nonaccrual status."  Specifically, it stated:

> In March 2018, *the borrower on the Company's $260.2 million NY hospitality loan failed to make its interest payment. The Company has placed the loan on nonaccrual status and has commenced discussions with the borrower to resolve the matter.* No provision for loan loss was recorded during the three months ended March 31, 2018 as the Company believes sufficient collateral value exists to cover the outstanding loan balances. These discussions typically include numerous points of negotiation as the Company and the borrower work towards a settlement or other alternative resolution, which can impact the potential for loan repayment or receipt of collateral.

43.     However, Colony Credit assured investors that the asset's performance was improving to support repayment of the loan.  On August 7, 2018, in a conference call with investors regarding its second quarter 2018 financial results, the Company disclosed that:

> [The] $261 million unlevered first mortgage and mezzanine investment secured by New York City Hotel . . . is now on non-accrual status and negatively impacting CLNC's quarterly core earnings by approximately $0.03 per share. *Ultimately, we believe this asset performance will improve as the New York City hospitality market emerges from recent oversupply issues. Through the first six months of this year, the asset is already seeing positive top and bottom line growth, and 2018 projected NOI [*i.e.*, net operating income] has increased approximately 70% from the beginning of the year.*

(Emphasis added.)

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

44.     On November 6, 2018, in a press release reporting its third quarter 2018 financial results, Colony Credit reported a $35 million provision for loan losses for the four loans secured by the New York hotel, as "the progress of discussion with [the] borrower . . . led the Company to explore additional options for a potential resolution, including a recapitalization and earlier than expected receipt and sale of collateral."

45.     That same day, the Company held a conference call to discuss the results, and Defendant Patel elaborated:

> As mentioned on our last call, we are working through the restructuring of four loans secured by a New York City hotel, which is on nonaccrual status and negatively impacting CLNC's core earnings by approximately $0.03 per share per quarter. We continue to work through this asset resolution. ***However, during the quarter, discussions with the borrower did not progress as anticipated, which has led us to explore additional options for resolution.***
>
> We've prepared a weighted average probability analysis of potential outcomes, which included a recapitalization and earlier than expected receipt and sale of the collateral. Based on this analysis, we recorded a $35 million provision for loan losses for the four loans secured by this hotel. ***As New York City hotel room additions are beginning to be absorbed, we continue to be New York City lodging market recovery looking ahead to 2019 and 2020. And the 2018 forecasted NOI for this particular hotel is up approximately 70% from its initial 2018 budget.***

(Emphases added.)

46.     On this news, the Company's share price fell $1.20 per share, or over 5%, to close at $19.97 per share on November 6, 2018.

47.     On February 28, 2019, the Company issued a press release to disclose its fourth quarter and full year 2018 financial results.  Therein, Colony Credit disclosed a $77

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

million provision for loan losses "related to four separate borrowers as a result of updates to the timing and likely range of outcomes achievable in connection with the asset foreclosures and dispositions."

48.     On this news, the Company's share price fell $0.94 per share, or over 5%, to close at $16.49 per share on March 1, 2019.

49.     On March 1, 2019, Colony Credit filed its annual report on Form 10-K for the period ended December 31, 2018.  Therein, the Company described the provision for loan losses as follows:

> During the fourth quarter of 2018, the borrower entered into a listing agreement with a real estate brokerage firm and as a result, we believe sale of the underlying collateral and repayment of the four loans from the sales proceeds is the most likely outcome. As such, we recorded an additional $18.8 million of provision for loan loss on the four NY hospitality loans in 2018 to reflect the estimated proceeds to be received from the borrower following the sale.

> *   *   *

> During the fourth quarter of 2018, two separate borrowers on three of our regional mall loans with unpaid principal balances of $29.9 million, $26.5 million, and $7.0 million, respectively, notified us of the potential loss of anchor tenants. Following this notification, we concluded that foreclosure or sale of the underlying collateral and repayment for each of these loans is the most likely outcome. As such, we recorded a provision for loan loss of $8.0 million, $8.8 million and $7.0 million respectively, to reflect the estimated fair value of the collateral. We have commenced foreclosure proceedings on two of the three loans collateralized by one of the regional malls with unpaid principal balances totaling $36.9 million. We have been and are continuing to sweep all cash from the operations of the two regional malls.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

50.     Then, on August 8, 2019, Colony Credit issued a press release to report its second quarter 2019 financial results, in which it reported a $119 million provision for loan losses "related to four separate borrowers."  Specifically, in a related conference call, the CFO stated:

> So let me provide some specifics about the $129 million in right [*sic*] down taken during the second quarter. One of the impairments is related to the ongoing resolution efforts of New York City Hospitality loans. This is a key part of our overall portfolio rationalization strategy, as the full loans secured by this asset remain on non-accrual status and therefore are not currently contributing core earnings.
>
> We initially impaired this asset in the third quarter of last year, based on market pricing estimates provided to the borrower by its broker. The borrower launched the sales process for the property earlier this year, which is adversely impacted by deteriorating hotel market conditions throughout New York City in the second quarter.
>
> This resulted in lower bids from potential buyers than originally anticipated. And therefore, during the second quarter, we impaired the asset to a revised estimate of current value. The borrower is monitoring market conditions, and we will share a progress with you in the near future.
>
> In addition, during the second quarter, we impaired a portfolio of owned real estate in preparation for disposition we intend to execute an accelerated timeframe. One of the assets from that portfolio is on the contracts and expect it to close during the third quarter.
>
> And lastly, additional impairments were also taken related to three separate borrowers whose loans secured by reasonable retail assets, deteriorated in credit quality during the quarter. These retail assets were a high priority focuses of QMC and are included in our portfolio rationalization strategy.

51.     The same day, after the market closed, Colony Credit filed its quarterly report on Form 10-Q for the period ended June 30, 2019, in which it stated, regarding the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

provision for loan losses:

> During the three months ended June 30, 2019, the Company revised its estimated recovery and recorded an additional $104.3 million of provision for loan loss. The additional provision is based on significant deterioration in the NY hospitality market and feedback from the sales process and reflects the estimated value to be recovered from the borrower following a potential sale.

* * *

> In June 2019, the Company completed foreclosure proceedings on two of the three loans secured by Northeast Regional Mall A with unpaid principal balances totaling $36.9 million. See Note 7, "Real estate, net and Real Estate Held for Sale" for further information.

> During the three months ended June 30, 2019, the Company recognized an additional $3.9 million provision for loan loss on Northeast Regional Mall B to reflect the estimated fair value of the collateral. The additional provision is based on current and prospective leasing activity. The Company has been and is continuing to sweep all cash.

> Also during the three months ended June 30, 2019, the Company separately recognized a $2.0 million provision for loan loss on two loans secured by one regional mall ("West Regional Mall") to reflect the estimated fair value of the collateral. The Company has been and is continuing to sweep all cash.

52.     On this news, the Company's share price fell $2.00, or more than 12%, over two consecutive trading sessions to close at $14.05 per share on August 12, 2019.

53.     On November 8, 2019, the Company announced a portfolio bifurcation of certain assets and disclosed a $127 million provision for loan losses. Specifically, during third quarter 2019, the Company recorded a $50.0 million provision for loan loss related to the NY hospitality loan "based on significant deterioration in the NY hospitality market, feedback from the sales process and the estimated value to be recovered from the borrower

following a potential sale." Moreover, the Company recorded impairments for loans on the regional malls, stating in the quarterly report filed the same day:

- During the three and nine months ended September 30, 2019, the Company recognized additional provisions for loan loss of $6.5 million and $10.5 million, respectively, on Northeast Regional Mall B. The additional provisions are based on current and prospective leasing activity to reflect the estimated fair value of the collateral. Interest payments are current and the Company has been and is continuing to sweep all cash.

- Also, during three and nine months ended September 30, 2019, the Company separately recognized provisions for loan loss of $16.5 million and $18.5 million, respectively, on two loans secured by one regional mall ("West Regional Mall") to reflect the estimated fair value of the collateral. Interest payments are current and the Company has been and is continuing to sweep all cash.

- Furthermore, during the three months ended September 30, 2019, the Company recognized a $37.3 million provision for loan loss on four loans to three separate borrowers ("South Regional Mall A", "South Regional Mall B", and "Midwest Regional Mall") to reflect the estimated fair value of the collateral. Interest payments for South Regional Mall A, South Regional Mall B and Midwest Regional Mall are all current. The Company has been and is continuing to sweep all cash related to South Regional Mall A and South Regional Mall B.

54. On this news, the Company's share price fell $2.50 per share, or nearly 18%, to close at $11.75 per share on November 8, 2019.

55. On February 18, 2020, *The Wall Street Journal* published an article identifying the troubled NY hospitality loan as being secured by Row Hotel near Times Square, which could "sell for as little as $50 million," following years of declining room rates and increasing construction in the city. The article also stated that lenders had

19

foreclosed several hotels in the area over the prior six months due to the declining market. The article, titled "Defaults Are Rising in Sluggish New York City Hotel Market," stated, in relevant part:

> New York's average daily room rate fell to $255.16 last year, according to research firm STR. That is down from $271.15 in 2014 and the lowest figure since at least 2013. A continued construction boom could push these numbers down further: 22,117 new hotel rooms were under construction or in planning as of January, according to SIR.
>
> Colony Credit Real Estate Inc. recently hired a brokerage firm to sell the mortgage on the 1,331-room Row Hotel near Times Square at a loss, according to people familiar with the matter. Colony Credit said in a 2018 public filing that the loan package had a principal balance of $260.2 million.
>
> The loan could now sell for as little as $50 million, say people familiar with the matter.
>
> * * *
>
> The debt, which is secured by a long-term lease on the hotel rooms, has been in default since 2018 because income from the rooms isn't enough to cover debt payments and rising expenses, according to filings with the Securities and Exchange Commission and people familiar with the matter.
>
> Several other hotel owners have had similar trouble. In June, a lender filed to foreclose on a hotel in Williamsburg, Brooklyn, over a defaulted $68 million loan, court records show. In December, a group of international lenders filed to foreclose on a Times Square hotel and retail tower once valued at $2.4 billion. Last month, the owner of the Blakely hotel in Midtown Manhattan said he would shut it down, citing stiff competition.
>
> And this month, a lender filed to foreclose on the former Hotel Americano, which in December was rebranded as Selina Chelsea.

56.     On May 8, 2020, Colony Credit filed its quarterly report on Form 10-Q for the period ended March 31, 2020, in which it disclosed:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

During the three months ended March 31, 2020 the significant detrimental impact of COVID-19 on the U.S. hospitality industry further contributed to the deterioration of the Company's four NY hospitality loans and as such the Company recorded an additional provision for loan losses of $36.8 million. On April 22, 2020, the Company completed a discounted payoff of the NY hospitality loans and related investment interests.

57.    As of the date of the filing of this complaint, Colony Credit's shares last closed at $5.40 per share, representing a more than 78% decline from the $25 book value per share valued at the time of the Merger.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

58.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons and/or entities who purchased or otherwise acquired the common stock of Colony Credit pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's Merger, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company or its related entities, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Moreover, record

owners and other members of the Class may be identified from records maintained by Colony Credit or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the Securities Act was violated by Defendants' acts as alleged herein;

(b)     whether the Registration Statement and statements made by Defendants to the investing public in connection with the Company's Merger omitted and/or misrepresented material facts about the business, operations, and prospects of Colony Credit; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

64.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

65.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

66.    This Count does not sound in fraud.  Plaintiff does not allege that the Defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

67.    The Registration Statement for the Merger was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

68.     The Defendants named in this Count are strictly liable to Plaintiff and the Class for the misstatements and omissions.

69.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

70.     By reason of the conduct herein alleged, each Defendant named herein violated, and/or controlled a person who violated, Section 11 of the Securities Act.

71.     Plaintiff acquired Colony Credit common stock pursuant and/or traceable to the Registration Statement for the Merger.

72.     Plaintiff and the Class have sustained damages.  The value of Colony Credit common stock has declined substantially subsequent to and because of Defendants' violations.

73.     At the time of their purchases of Colony Credit common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years elapsed between the time that

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the securities upon which this Count is brought were offered and the time Plaintiff commenced this action.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Individual Defendants)**

74.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

75.   This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against the Individual Defendants.

76.   The Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Colony Credit within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Colony Credit to engage in the acts described herein.

77.   The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

78.   By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demand a trial by jury.

Dated:  September 10, 2020                    Respectfully submitted,


                                              **POMERANTZ LLP**
                                              */s/ Jennifer Pafiti*
                                              Jennifer Pafiti (SBN 282790)
                                              1100 Glendon Avenue, 15th Floor
                                              Los Angeles, California 90024
                                              Telephone: (310) 405-7190
                                              Facsimile: (917) 463-1044
                                              Email: jpafiti@pomlaw.com

                                              **BRONSTEIN, GEWIRTZ &**
                                              **GROSSMAN, LLC**
                                              Peretz Bronstein
                                              60 East 42nd Street, Suite 4600

26

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS