UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    #45(6/11)

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**       **The Court GRANTS Defendants' motion to dismiss with leave to amend.**

Before the Court is a motion to dismiss filed by Defendants Colony Credit Real Estate, Inc. ("Colony Credit"), Sujan S. Patel, Neale W. Redington, Catherine D. Rice, Richard B. Saltzman, Frank V. Saracino, Vernon B. Schwartz, Darren J. Tangen, Kevin P. Traenkle, John E. Westerfield, and Winston W. Wilson (the "Individual Defendants") (collectively, "Defendants"). *See generally* Dkt. # 45-1 ("*Mot.*").[1]  Plaintiffs Philip Nuccetelli, Alan Cohen, Roger P. Martyna, and Terrence Peters (collectively, "Plaintiffs") opposed,[2] *see generally* Dkt. # 48 ("*Opp.*"), and Defendants replied, *see generally* Dkt. # 50 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendants' motion to dismiss.

I.      Background

        A.      Factual Background

Colony Credit is a real estate investment trust wholly owned by Colony Northstar Inc. ("Colony Northstar").  *First Amended Complaint*, Dkt. # 37 ("*FAC*"), ¶¶ 34, 36.  It was created

---

[1] The Court cites Defendants' memorandum in support of its motion because it contains Defendants' substantive arguments.  Defendants' motion, itself, is Docket Entry # 45.
[2] Plaintiffs bring their claims on behalf of a class consisting of all those who purchased or otherwise acquired Colony Credit securities in the United States from February 1, 2018 to November 9, 2019 and including those who acquired their stock in connection with the below discussed merger.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

on January 31, 2018, when certain Colony Northstar subsidiaries merged with NorthState Real Estate Income Trust, Inc. ("NS1") and NorthStar Real Estate Income II, Inc. ("NS2").[3] *Id.* ¶¶ 36–37, 42.

The merger combined "substantially all of the assets and liabilities" of NS1 and NS2 with select portfolios of two Colony Northstar subsidiaries. *Id.* ¶ 40. Most notably, this included NS1's leasehold interest in the Row Hotel NYC (the "Hotel"). *Id.* ¶ 46.

On December 4, 2017, Defendants filed their Registration Statement pursuant to the merger. *See Declaration of Terrence W. Scudieri, Jr.*, Dkt. # 48-2 ("*Scudieri Decl.*"), ¶ 5, Ex. A ("Form S-4 Registration Statement") at 1 ("*Registration Statement*").[4] The Registration Statement indicated that "the current yields for [NS1]'s . . . loans receivable approximated current market yields, and therefore fair value for the loans receivable was deemed to equal each loan's outstanding principal amount . . . ." *Id.* ¶ 55. Plaintiff alleges that this implied that the Hotel's value was approximately $260 million. *Id.* ¶ 56. Colony Credit also represented that, "on a periodic basis," it would evaluate collateral properties to determine whether to record a loan impairment. *Id.* ¶ 54. In evaluating whether a loan on a real estate debt investment is considered impaired, Colony Credit stated they would consider

> the estimated net recoverable value of the loan as well as other factors, including but not limited to the fair value of any collateral, the amount and the status of any senior debt, the quality and financial condition of the borrower and the competitive situation of the area where the underlying collateral is located.

*Registration Statement* at 698.

On February 1, 2018, Colony Credit began trading on the New York Stock Exchange. *See Declaration of Matthew W. Close*, Dkt. # 45-3 ("*Close Decl.*"), ¶ 3, Ex. B ("Form 10-Q"

---

[3] Although originally named Colony Northstar Credit Real Estate Inc., *see FAC* ¶¶ 40–42, any distinction between Colony Credit and Colony Northstar Real Estate Inc. is immaterial for the purposes of this motion. Therefore, the Court will refer to Colony Real Estate Inc. as Colony Credit.

[4] Plaintiffs explicitly reference the Registration Statement, quote from it, and discuss and rely on its content in their FAC. *See, e.g.*, *FAC* ¶¶ 103–06. Thus, the Court may properly consider it as incorporated by reference. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

filed May 15, 2018) at 121 ("*10QMay2018*").[5]  In the May 2018 Quarterly Report, Colony Credit stated that the borrower on the Hotel's mortgage had "failed to make its interest payment" but that "no provision for loan loss was recorded . . . as [Colony Credit] believe[d] sufficient collateral value exist[ed] to cover the outstanding loan balance."  *FAC* ¶ 108.  Colony Credit explained:

> On a periodic basis, the Company analyzes the extent and effect of any credit migration from underwriting and the initial investment review associated with the performance of a loan and/or value of its underlying collateral, financial and operating capability of the borrower or sponsor, as well as amount and status of any senior loan, where applicable. Specifically, operating results of collateral properties and any cash reserves are analyzed and used to assess whether cash from operations are sufficient to cover debt service requirements currently and into the future, ability of the borrower to refinance the loan, liquidation value of collateral properties, financial wherewithal of any loan guarantors as well as the borrower's competency in managing and operating the collateral properties. Such analysis is performed at least quarterly, or more often as needed when impairment indicators are present.

*Id.* ¶ 59.  Plaintiff allege this statement also appeared in other filings.  *See id.* ¶ 59 (May 2018 Quarterly Report); *id.* ¶¶ 74, 126 (November 2018 Quarterly Report).  Credit Colony also noted that

> fair values were determined: (i) by comparing the current yield to the estimated yield for newly originated loans with similar credit risk or the market yield at which a third party might expect to purchase such investment; or (ii) based on discounted cash flow projections of principal and interest expected to be collected, which includes consideration of the financial standing of the borrower or sponsor as well as operating results of the underlying collateral.

*Id.* ¶ 61.  The report additionally stated "[l]oans are considered to be impaired when it is probable that the Company will not be able to collect all amounts due in accordance with

---

[5] Plaintiffs explicitly reference the May 15, 2018 Security and Exchange Commission ("SEC") filing in the FAC and discuss its content. *See FAC* ¶¶ 58–63, 108–11.  Thus, the Court may properly consider it as incorporated by reference.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1051.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

contractual terms of the loans, including consideration of underlying collateral value." *Id.* ¶ 110. This same representation regarding when loans are considered impaired was reprinted in later reports. *See id.* ¶ 114 (August 2019 Quarterly Report); *id.* ¶ 122 (November 2018 Quarterly Report); *id.* ¶ 134 (May 2019 Annual Report); *id.* ¶142 (August 2019 Quarterly Report). Plaintiffs allege that Defendants knew the value of the collateral was insufficient to cover the outstanding loan balance at all such times. *Id.* ¶¶ 109, 115, 123, 135, 143.

In the August 2018 Quarterly Report, Defendants continued to report that no provision for loan loss was recorded for loans secured by the Hotel. *Id.* ¶¶ 67, 112, 116. That same month, Defendant Patel represented that the Hotel was worth $261 million. *Id.* ¶ 118. In the November 2018 Quarterly Report, Defendants recorded a $35.1 million provision for loan loss on the Hotel loans. *Id.* ¶ 120. In the accompanying earnings call, Defendant Patel characterized the "New York City lodging market" as impacted negatively by additional hotel rooms and stated that "the forecast [net operating income] for this particular hotel is up approximately 70% from its initial 2018 budget." *Id.* ¶ 128. Plaintiffs allege that Defendants failed to disclose that the Hotel was "being used, in part, for social service programming and homeless sheltering purposes, and not for lodging and hospitality service, and would continue to be used through at least 2023." *Id.* ¶ 129.

In a March 2019 Annual Report, Defendants noted that the Hotel was to be sold and that they "recorded an additional $18.8 million of provision for loan loss . . . to reflect the estimated proceeds to be received from the borrower following the sale." *Id.* ¶ 132. This implied that Defendants were valuing the Hotel at $206.3 million, an assertion which Plaintiffs allege was false. *Id.* ¶ 133. During the accompanying earnings call, Defendant Traenkle stated that Defendants had decided to sell the Hotel because its "earnings are a little bit lumpy," but Traenkle also stated that they were optimistic about their ability to sell the portfolio. *Id.* ¶ 138.

In the August 2019 Quarterly Report, Defendants reported an additional $104.3 million provision for loan loss attributed to "significant deterioration in the NY hospitality market and feedback from the sales process." *Id.* ¶ 140. In the accompanying call they again characterized the hotel market as "deteriorating," which Plaintiffs allege was false. *Id.* ¶¶ 146–47.

Share prices for Colony Credit dropped from $17.99 per share on November 6, 2018 to $11.29 per share on November 11, 2019. *Id.* ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

B.      Procedural Background

On September 10, 2020, Plaintiff Terrence Peters filed a class action complaint against Defendants. *See generally* Dkt. # 1. On November 9, 2020, Philip Nuccetelli, Alan Cohen, and Roger P. Martyna (collectively "Lead Plaintiffs") filed a motion for appointment as lead plaintiffs, which the Court granted on December 11, 2020. *See generally* Dkts. # 13, 33.

The Lead Plaintiffs all acquired their Colony Credit stock in connection with the merger on January 31, 2018. *See Declaration of Jennifer Pafiti*, Dkt. # 15, ¶ 2, Ex. E ("*Joint Declaration in Support of Lead Plaintiff Motion*"), at ¶¶ 2–4. Plaintiffs allege that (1) all Defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("SEA") and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, *see generally FAC* ¶¶ 175–80, and that (2) the Individual Defendants are jointly and severally liable for violations of § 20(a) of the SEA, *see generally id.* ¶¶ 181–85.

The Court provides a brief overview of the individual defendants as follows. Defendant Saltzman was the Chairman of Colony Credit's Board of Directors. *Id.* ¶ 21. He signed the company's Registration Statement and both annual reports discussed above. *Id.* Defendant Traenkle was the President and Chief Executive Officer of Colony Credit. *Id.* ¶ 22. He signed the Registration Statement, annual reports discussed above, and certifications "attesting to the veracity of the statements in each of the foregoing quarterly reports." *Id.* Defendant Patel was the Chief Financial Officer and Treasurer of Colony Credit until November 2018. *Id.* He signed the Registration Statement, May 2018 and August 2019 quarterly reports, and certifications "attesting to the veracity of the statements in each of the foregoing quarterly reports." *Id.* Defendants Redington took over as Chief Financial Officer once Patel left, prior to that he was the Chief Accounting Officer. *Id.* ¶ 24. He signed the Registration Statement, both annual reports discussed above, all quarterly reports discuss above, and certifications "attesting to the veracity of the statements in each of the foregoing quarterly reports." *Id.* Defendant Rice was a director of Colony Credit and signed the Registration Statement and both annual reports. *Id.* ¶ 35. Defendant Saracino was Colony Credit's Chief Account Officer after Redington; prior to taking the position he was the Managing Director. *Id.* He signed the Registration Statement, both annual reports discussed above, and the November 2019, May 2019, and November 2019 quarterly reports. *Id.* Defendants Schwartz, Tangen, Westerfield, and Wilson were all directors of Colony Credit and signed the Registration Statement and both annual reports. *Id.* ¶¶ 27–31.

Defendants now move to dismiss both of Plaintiffs' causes of action. *See generally Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

II.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud.  Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

Complaints alleging violations of Section 10(b) of the Exchange Act must also comply with the Private Securities Litigation Reform Act ("PSLRA") of 1995.  Through the PSLRA, Congress imposed heightened pleading standards on federal securities fraud actions.  *See* 15 U.S.C. § 78u-4(b)(l)–(2).  "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogated on other grounds as recognized in S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).  "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

*Vantive*, 283 F.3d at 1084–85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)).  To meet the exacting standards of the PSLRA, a plaintiff must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *Id.* at 1085 (internal citation omitted).

III.    Discussion

        To prevail under § 10(b) and Rule 10b-5, a plaintiff must establish that there was "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).  Further, to satisfy Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), meaning a plaintiff must plead the "who, what, when, where, and how" of any alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted).  The PSLRA goes further, requiring plaintiffs to "plead with particularity both falsity and scienter." *In re Daou*, 411 F.3d at 1014 (citation omitted).  The PSLRA's specificity requirements "prevent[] a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Thus, plaintiffs *must* "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)).  Notably, in evaluating scienter, the Court "must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX*, 298 F.3d 893, 897 (9th Cir. 2002).

        Defendants argue that the FAC fails to adequately allege (1) falsity and scienter and (2) reliance.  Therefore, Defendants argue that the FAC fails to state a § 10(b) claim.  Consequently, Defendants contend that Plaintiffs' derivative § 20(a) claim fails as well.  The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

A.      First Cause of Action: Violation of § 10(b)

        i.      *Falsity and Scienter*

"[N]either Rule 10b–5 nor Section 14(e) contains a freestanding completeness requirement; the requirement is that any public statements companies make that could affect security sales or tender offers not be misleading or untrue." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). In determining whether a statement is actionable, the Ninth Circuit has observed that "[t]he securities laws do not require management 'to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.'" *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 516 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 6, 1991) (*TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 448–49 (1976)). "Thus, in order to survive a motion to dismiss under the heightened pleading standards of the Private Securities Litigation Reform Act ('PSLRA'), the plaintiffs' complaint must specify the reason or reasons why the statements made by [a defendant] were misleading or untrue, not simply why the statements were incomplete." *Brody*, 280 F.3d at 1006.

The FAC essentially alleges that Defendants continuously overvalued the Hotel publicly while using an evaluation method evidencing the Hotel was worth much less in private. *See FAC* ¶ 52. Plaintiffs instead calculate the value of the Hotel by first determining that "the minimum value the Company claimed the Hotel to be worth in November 2018" was $225.3 million. *Id.* ¶ 64 n.11 Then, because the Hotel "was performing 70% above the level predicted as of January 2018" at that time, Plaintiffs deduce that the value as of January 2018 "based on income" must have been $132.47 million. *Id.* All subsequent assertions that Defendants were lying about their evaluation are seemingly based on this calculation.

Although Plaintiffs are correct that Defendant Patel stated in November 2018 that the Hotel's net operating income was 70 percent above the expectations set at the beginning of the year, this does not establish that the Hotel's overall evaluation as collateral was inflated by 70 percent. The assertion rests on Plaintiffs' argument that Defendants said the Hotel's value as a collateral asset is based on its income. Yet, even Plaintiffs' own filings are contradictory on what methodology they believe Defendants were using privately. In the FAC, Plaintiffs allege "the Company valued the Hotel when determining its value as loan collateral at between two and five times its fair value, or the value of the Hotel as determined using a discounted cash flow analysis based on the Hotel's operating results," *id.*, but in their opposition Plaintiffs repeatedly state that Defendants said they would use the direct capitalization method, *see Opp.* 5:13–28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

Plaintiffs own confusion highlights the fatal flaw in their argument, that Defendants repeatedly provided several different ways they would calculate the value of the Hotel as loan collateral and, within each potential method of calculation, several different factors they might consider. Plaintiffs conflate statements made by Defendants that evaluation of an asset in one way could be appropriate with evidence that Defendants actually used and relied on those calculations.

Further, even if Plaintiffs could allege facts showing Defendants had relied on only one of the two stated tests, the tests themselves are subjective. For example, the Registration Statement notes it establishes the direct capitalization rate by "taking into account, among other factors, prevailing discount and capitalization rates in the commercial property sector, as deemed appropriate for each property. In determining each appraised value, other relevant information was also considered, including trends in capitalization rates, discount rates, interest rates, leasing rates and other economic factors." *Registration Statement* at 422–24.

Additionally, all of the statements Plaintiffs characterize as giving false evaluations of the value of the Hotel as collateral actually concern recorded loan losses. Plaintiffs argue the loan losses represent only the difference between the Hotel's value and the outstanding balance, but Defendants have represented repeatedly in the same filings that provisions for loan losses are determined using various factors not just the valuation of the collateral alone.

The facts here are similar to those in *Align Tech*. There, the court found that Plaintiff had "place[d] undue emphasis on its own calculations of what the fair value of the SCCS unit should have been in 2011." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 852 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017). It concluded that, "[a]t best, these calculations represent [p]laintiff's opinion as to how [defendant] could have or should have calculated the fair value of its reporting units." *Id.* at 853. The *Align* court further reasoned "[t]hat [p]laintiff selected certain assumptions to reach a conclusion of impairment does not demonstrate what assumptions [*defendant*] made in conducting its . . . analysis, nor does it suffice to show that [defendant]'s selection of different assumptions would have been so unreasonable as to amount to fraud." *Id.*

Plaintiffs attempt to distinguish *Align Tech* by arguing, again, that the assumptions Plaintiffs made in calculating the Hotel's value were based on statements by Defendants. *Opp.* 15:7–16:2. Yet, as discussed above, Defendants provided several different types of evaluation methods they would use in evaluating the value of its loans and the value of loan collateral. Plaintiffs simply chose one such method and applied it in a specific way to generate a different value than that reported by Defendants. Therefore, at best, Plaintiffs have alleged one potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

methodology that could have been used under the parameters Defendants provided to reach a different result.  However, this does not suffice to show that Defendants' application of their evaluation methods was fraudulent or that they knew their application was potentially misleading, let alone fraudulent.  Thus, the Court cannot find that Plaintiff has adequately alleged falsity.

Separately, Defendants also point to "a grab bag of one-off statements" that Plaintiffs challenge.  *See Mot.* 17:23–21:4.  Defendants argue that most of these statements are lacking in particularity for various reasons.  *Id.*  Plaintiffs concede almost all such contentions by failing to oppose them.  *See Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015) (arguments to which no response is supplied are deemed conceded); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same).

However, Plaintiffs do oppose Defendants' arguments regarding Traenkle's statements in the August 2019 Quarterly Report and following Earnings Call.  *Opp.* 19:17–20:13.  Plaintiffs contend that Traenkle's promises that "the risks are very low" were materially misleading.  *Id.*

As an initial matter, as Defendants note, Traenkle's specific statements related to the "bigger picture on the whole portfolio."  *Close Decl.*, Ex. H ("*Feb 2019 Earnings Call*") at 279.  Even to the extent that they do reflect Traenkel's beliefs about the Hotel's value, they are not factual statements, but opinion for which Plaintiffs have pointed to no facts suggesting Traenkle knew the statements to be false at the time they were made.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017), *cert. dismissed sub nom. Quality Sys., Inc. v. City of Miami Fire Fighters' & Police Officers' Ret. Tr.*, 139 S. Ct. 589 (2018) ("[G]eneral statements of optimism, when taken in context, may form a basis for a securities fraud claim" when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly  as discussed above.).

Finally, Defendants also argue that Plaintiffs have failed to properly allege scienter.  *Mot.* 23:3–25:15.  Plaintiffs argue they properly alleged scienter based on specific statements made by Defendants Patel and Traenkle and based on the nature of the misrepresentation.  *Opp.* 20:15–22:14.  These arguments, however, are based on the premise that Defendants actually applied Plaintiffs' valuation test and then lied about the outcome of it.  Without additional facts showing falsity, the scienter argument necessarily fails as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

Thus, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' first cause of action because they have failed to allege falsity or scienter with particularity.

### ii.    Reliance

Defendants argue that Plaintiffs have not shown reliance because (1) they fail to plead any fact showing that Lead Plaintiffs actually read the Registration Statement and (2) they have otherwise failed to prove a presumption of reliance. *See Mot.* 6:9–8:28.

Plaintiffs do not point to any specific instance of reliance, but instead argue they are entitled to a presumption of reliance. *See generally Opp*. 8:4–11:12. The Supreme Court has recognized two instances in which a presumption of reliance applies: (1) "if there is an omission of a material fact by one with a duty to disclose;" and (2) "under the fraud-on-the-market doctrine," in which case "reliance is presumed when the statements at issue become public." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 148–49 (2008).

### a.    Omission vs. Misrepresentation

As established in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), "a presumption [of reliance] is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact." *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999). "The categories of 'omission' and 'misrepresentation' are not mutually exclusive." *Little v. First Cal. Co.*, 532 F.2d 1302, 1305 (9th Cir. 1976). Thus, the Ninth Circuit has held that the presumption "is limited to cases that 'can be characterized as . . . primarily alleg[ing] omissions.'" *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009) (quoting *Binger*, 184 F.3d at 1064).

Here, Plaintiffs argue that Defendants omitted relevant information in the Registration Statement and various post-merger filings. *See generally FAC* ¶¶ 102–149. Specifically, the Registration Statement characterized the fair value of the NS1 and NS2 loans receivable as "equal [to] each loan's outstanding principal amount." *Id.* ¶ 55. Plaintiffs contend this constitutes an omission because, in Defendants' evaluation, they "omitted known trends about the performance of the Hotel that directly impacted its valuation and significantly increased the risk that the Company would have to take substantial loss impairments on the loans the Hotel collateralized." *Id.* ¶ 103; *see also Opp*. 8:16–24. They specifically note that "Defendants omitted to state that at the beginning of 2018, the Hotel had a projected annual [net operating income] that, even with a 70% improvement, would result in a fair valuation of the Hotel that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|---|---|---|---|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

would require the Company to record material provisions for loan losses." *Id.* Plaintiffs instead calculated the value of the Hotel using a different method, as discussed above.

The Court disagrees with Plaintiffs that this case primarily alleges omissions. Rather, at bottom, Plaintiffs are arguing that Defendants lied about the value of the Hotel. Other courts contemplating similar factual patterns have come to the same conclusion.

For example, in *Loritz v. Exide Techs.*, No. 2:13-CV-02607-SVW-E, 2015 WL 6790247, at *1 (C.D. Cal. July 21, 2015), the defendant made statements suggesting it was compliant with environmental protection requirements and failed to disclose facts suggesting otherwise. *Id.*, at *2–*3. The court found the case was not one primarily alleging omission and emphasized that because the company "made affirmative statements" regarding the environmental issues, "the rationale behind the *Affiliated Ute* presumption—the difficulty of proving a 'speculative negative'—[did] not apply." *Id.* at *21; *see also In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171, at *12 (C.D. Cal. May 11, 2017) (finding no *Affiliated Ute* presumption where financial statements were inaccurate "because [defendants] did not include a tax liability" and falsely stated financial statements were in conformity with GAAP or IFRs).

Defendants here made affirmative statements about the valuation of the Hotel as collateral and any omitted facts are only material as they relate to Defendants' allegedly false affirmative statements. Therefore, the Court finds that Plaintiffs do not primarily allege omissions, but rather they allege that Defendants misstated the value of an asset. Accordingly, the presumption of reliance does not apply.

Further, although Plaintiffs argue that a fraud on the market presumption may apply, they seemingly concede that the presumption could not apply to the Lead Plaintiffs because they acquired their shares prior to Colony Credit being traded publicly. *See Opp.* 10:3–6.[6] Thus, because the Lead Plaintiffs have failed to state a claim, the action must be dismissed. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to

---

[6] Briefly, the Court notes that the alternative fraud on the market presumption would apply to any individual or entity who purchased stock after Colony Credit began trading on the New York Stock exchange. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 619 (C.D. Cal. 2009) (finding securities traded on the New York Stock Exchange with a market capitalization between $385 million and 1.3 billion to meet *Basic* presumptions). Defendants do not dispute this point. *See Mot.* 7:5–8:12.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8305 PSG (PVCx) | Date | June 7, 2021 |
|----------|------------------------|------|--------------|
| Title | Terrence Peters v. Colony Credit Real Estate, Inc. | | |

represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1070 (N.D. Cal. 2014) (dismissing securities fraud claims when lead plaintiff could not prove elements of securities fraud but other in class may be able to).

> B.      Second Cause of Action: Violation of § 20(a)

Because Plaintiffs' § 10(b) claim fails, their derivative § 20(a) claim fails as well. *See City of Royal Oak*, 880 F. Supp. 2d at 1070.

IV.      Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Here, leave to amend is appropriate because amendment would not necessarily be futile.

IV.      Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss with leave to amend. Plaintiffs must file an amended complaint by **July 7, 2021**. Failure to do so will result in dismissal with prejudice.

**IT IS SO ORDERED.**